Good morning. May it please the Court. Good morning, Counsel. Elizabeth Olson for the United States. I just want to respond to a couple of things that the defense counsel mentioned. First of all, I was thinking about DEMA because, you know, the government laid out this distinction between DEMA, in which a defendant was asking for an entrapment instruction even though he was contesting an element of the offense, with this case where the defendants were asking for an entrapment instruction even though they were contesting an element of entrapment. And I thought there was a difference there, but Mr. Golden's counsel, in his reply brief, pointed out this law in the Supreme Court and the Ninth Circuit that defendants can raise inconsistent defenses, and they're permitted to do that. So I started thinking about it, and I think I actually came up with a hypothetical in which a defendant whose contesting knowledge of inducement might still be entitled to an entrapment instruction for example, in a case where the government's evidence shows that the government agent contacted the defendant seven, eight times, that initially he was reluctant, but eventually agreed to commit the crime and committed the crime. And the defendant's theory was, well, that wasn't me. Whoever the government was talking to, that wasn't me. Somebody must have stolen my cell phone. I have no idea what they're talking about. But in that case, the defendant, under this theory that a defense can have inconsistent defenses, might be able to say, well, it wasn't me, but if the jury doesn't believe that and thinks that it was me, well, then I was entrapped because clearly whoever the government was talking to, they entrapped into committing the crime. So that might be a possibility just based on this idea of inconsistent defenses, but that's just simply not what we have here. I mean, in order for a defendant to be entitled to an entrapment instruction, among other things, the evidence has to create or present a genuine question as to whether a government agent induced the defendants to commit the crime. And here, what the district court found is there's simply no evidence. There wasn't any evidence of inducement in the government's case. There wasn't any? There wasn't any. I mean, what we've got, between the three of us, I think we've probably cited 12 cases where this Court has held and reiterated that offering someone the opportunity to commit a crime does not constitute inducement. That's true, but we've also talked about monetary reward being sufficient for an inducement. Now, the average cocaine deal is $2.5 million. I think the citation that they give was Sotelo Murillo, and the question in that case was whether the government's position in that case was because it was for money, that the fact that there was going to be pecuniary gain, that precluded a finding of inducement. And this Court said, no, it doesn't preclude. The fact that the reward is going to be financial doesn't preclude inducement. Well, even Matthews talks about that. Matthews talks about a monetary inducement. And there is some evidence of a monetary inducement. It came from the government. But there is some evidence for the jury to believe. There is evidence that the payoff of this crime that the government was proposing was significant. But I'd just go back to what in Sotelo Murillo, although the fact that there was pecuniary gain was not going to preclude inducement, the evidence in that case was that the government agent was persistently and repeatedly trying to get Mr. Sotelo Murillo to commit the crime. I mean, it wasn't. How is that a distinction when they only ask for some evidence? They keep talking about a minimum of evidence in order to get the jury instruction. We're not saying the jury is going to believe all this. The only question is, was he entitled to a jury instruction? What we – I think that the difference between this case and Sotelo Murillo is that in both cases there was money to be made, right? And, in fact, every time – I can't really think of a case where the government offers someone an opportunity to commit a crime and there isn't some money to be made or some benefit to be had. I mean, that's the nature of crime, right? And the difference is, is that there has to be inducement. I mean, it's not just the opportunity. It's repeated persuasion. But isn't there authority that suggests the size of the money to be made, the large quantity, is the extra piece that you need? Well, all I can say is that – And easy money. Excuse me? And easy money. Well – Arguably easy money. In fact, I mean, I will say that the district court specifically rejected that. I mean – I know what the district court rejected when we're talking about the jury. You know, this stash house sting that ATF does, they've developed over the years. And one of the things they do every single time they meet, they talk about how dangerous it is. They've devised this daytime armed robbery of a stash house that can't be cased ahead of time because they don't know where it is with an unknown number of people inside. There's more drugs, meaning that it's likely that people are going to be coming in afterwards, so they don't know how much time they have. I mean, you know, at every step, this is designed to be dangerous. But here, they downplayed the dangers. It's one person probably unaware that you're going to come, carries a gun. The rest of them are not packing $2.5 million worth of cocaine. Actually, this is a factual matter. Even at that last meeting, now, the last meeting where Deontay Reed, who was the person they were targeting, who put together the crew, I mean, they had information that Deontay Reed had a crew that was doing armed robberies. So they contacted him. He brings the crew together at that last meeting where all four of them get together. The first thing agents say is he gets them all together, and he's meeting Golden for the first time, and in fact, he thought he was meeting Spence for the first time because they didn't realize until much later that Spence had been at that first meeting. So he gets them all together, and the first thing he does, he says, I just want to let you guys know I'm nervous as F because these guys don't play around, and this is serious, so I just want to make sure we're all on the same page. And he turns to Mr. Reed, and he says, did you tell them, indicating Golden and Spence, did you tell them that there's two guys in there and one of them is armed? The armed one stays with me. The other one goes in back, and I don't know if there are more people back there. Right? I mean, so even then The more you get into details, aren't you getting to what the jury has to decide really happened? No. Well, no, because at the end of the day, there is not a case in this Court that says, or any Court that says, if it's enough money, then simply presenting the opportunity is enough to amount to inducement. That wasn't the case in Sotelo-Murillo. It was a lot of money, plus it was persistent requests, which the defendant ultimately agreed after repeated persuasion. You agree, don't you, that the monetary aspect is sufficient to be persuasive? Suppose it didn't go three times, but the money is there. Yeah. Are you saying that they wouldn't be entitled to the instruction just because they didn't go and talk to him a lot? No. Not because of that, but I'll tell you why. Because if what we're talking about with entrapment, I mean, the policy reason behind the prohibition on entrapment, right, is because we don't want government agents to be talking otherwise law-abiding people into committing crimes. Right. Okay? And so the question is, you know, if it's a whole lot of money, is an otherwise law-abiding person going to agree to commit an armed daytime robbery of a cocaine stash house with an unknown number of people inside? And I think that this idea that there has to be, I mean, the question is whether the government's persuasion will overcome an otherwise law-abiding person's natural reluctance to engage in the crime. That's right. And they will balance what? They'll balance the risk with the reward, right? So as the money amount goes up, if they believe it, then they'll take more risk, this law-abiding person, because all of a sudden they can pay all their bills and pay off the house and blah, blah, blah, and their wife will quit jumping on them for not bringing money home. The process is one of balance. There's an interesting law review article on that. I didn't get into this until I found Mr. Spence didn't cite Matthews. And so I read Matthews, and then I got into the rest of this. But the theory is, the theory of this law review article, this isn't case law, this is professor law, is that you have to look at the balance when you're talking about monetary, when you're talking about monetary reward as the thing that's going to overcome the reluctance of the law-abiding citizen. You have to look at the amount plus the risk. So the risk down here, if it's very small and the amount is high up here, his thesis is then there can be inducement for entrapment instruction. Now, what's your response to that? I would just say two things in response to that, one legal, one factual. First of all, the quotation from Matthews that I like at Pinpoint 66, they talk about that. They talk about that balancing. And then they say, of course, evidence that government agents merely afforded an opportunity or facilities for the commission of the crime would be insufficient to warrant such an instruction. So here, if what you've got is the government agent simply offering an opportunity, that's insufficient to warrant the instruction. But the other point that I would make is a factual point, that when Deontay Reid brought Mr. Spence and Mr. Golden to that last meeting, and you look at what was said at that meeting, it is clear, I mean, it is clear from the record, that if someone talked these two gentlemen into participating, it was Mr. Reid. It wasn't the agent. I see I'm out of time. But it's okay. This is an important case. It's ten minutes, but it's a very critical case we have to worry about in the future, and law enforcement needs to know what the rules are. I take it the government doesn't take the position that the defense can't have an inconsistent defense. No, I think, right, the law is clear that defendants can propose inconsistent defenses. Yeah, like a rape charge, and he says I didn't do it, but even if I did, she consented. Yes. Yeah. So we have that here, but that's not your argument. Your argument is there's a failure of sufficient inducement. Right. And that is what the district court found as well. Now, but the district court gave this instruction before in the prior case. Yes. The other two defendants, Mr. Reid and Mr. Jackson, were tried separately. And I don't know. Obviously, we didn't brief that, but I believe that that trial transcript is in the record, so if I can speak to it. There was, and like, you know, what this Court has said, it can be weak, it can be inconsistent, it doesn't have to be believable, but there needs to be some evidence. There was evidence at that trial. Mr. Reid, there was evidence at that trial, weak and inconsistent, though it may be, that Mr. Reid was afraid of these government agents. And so in that case, I don't know that that was the basis on which the district court gave the instruction, but there was at least some weak or inconsistent evidence that there was a fear motivator for Mr. Reid and for his brother, Mr. Jackson. How do you read the district judge's statement of what bothered him about giving the instruction in this case? Well, you know, I'll tell you what. He said two things. First of all, he said there's insufficient evidence adduced to support the instruction. Yeah. And then they, and then he said there has to be government action. Where's the evidence of inducement? And the defendant says, and then they said, you know, you're saying there wasn't any whatsoever, that you didn't even know what was going on. Yeah. But at the end of the day, I think that what the judge was saying was there's nothing in the government's evidence. He said, just because it's the Bank of America, it sounds like it has all the money in the United States, that's not enough. I mean, that by itself doesn't constitute inducement. There's nothing in the government's evidence, and you're not bringing forward anything either. Yeah. But clearly, he doesn't have to. Clearly, if the government provides the evidence, then there's evidence to go to the jury. He can use it. Yes, if the government does. I mean, the defendant has to point to something. Yeah. It can be in his evidence. It can be in the government's evidence. But at the end of the day, and the district court pressed him on it, at the end of the day, all they said was, Your Honor, it's a whole lot of money. Yeah. And there's just simply not a case in the circuit that says that, or any circuit or any court, that says if it's enough money, then merely offering the opportunity is sufficient to constitute an inducement. They're just, there is, that case is not there. So you don't, you don't, you don't go along with the law professor that you have to do this balancing, and if the money is high enough against the risk that he has to take, that that is sufficient to overcome the inducement. The government doesn't buy into that issue. I think, I think that I, I get what he's saying about, you know, the more the payoff, perhaps the lower the risk, but, or perhaps the lower the inducement needs to be. But I, but I don't. The induce, the idea is if it's enough money, even though there's some risk, a law-abiding citizen will do it just because that pile of money is out there. That's the idea. Yeah. What I would say is, while there, while it might tilt back and forth, I don't think this one ever gets to zero. I mean, I don't think that if it's enough that just the opportunity with no further inducement, with no repeated solicitation, with no persuasion or pressure, if it's just enough, if it's just enough money, that in and of itself would convince an otherwise innocent person to commit the crime to warrant an intradministration. So I, I go out here outside and somebody says, I've got a really good deal for you, $20 million. Well, not me, because I'm sort of not the average person, I suppose, but someone does it, one, just somebody on the street. The government's position is there's no amount of money, even if they believe it. There's no amount of money that would allow inducement. Of an otherwise. I believe that you are an otherwise law-abiding person, Your Honor. Except I'm too much into law. That's my problem. But I do. I mean, I think that the point, what we're trying to do is keep the government from, through persuasion and persistent solicitation, overcoming an otherwise innocent person's reluctance to engage in criminal activity. And if all it is, is there's a huge payout, in and of itself, with no, I mean, first time you walk up to somebody on the street and you just say, here, commit this crime, and there will be this huge payout, and someone says, okay, fine, let's go. There's no, that you're not overcoming that natural reluctance, because, because they're just. But, but isn't there? I mean, I go back to philosophy class, and you're told, okay, you can, we'll give you a million dollars. Today, it may have to be $10 million. And you press a button, and somebody in Africa dies. You do that. And you, for $5,000, $10,000. But you start getting into millions, and people acknowledge, gee, the temptation is enormous. Isn't that an illustration of how the amount of money is, in fact, an important factor? The risk-reward ratio is a big factor in an individual's calculation. Yeah. It's an important, I think that, I think that it is a factor. I just don't know that it ever, that it ever becomes, that it ever actually eliminates the other piece of, of that equation. And certainly, certainly not in this case, because this isn't, you know, press a button. This is go in, guns a-blazing. You know, people are going to get killed. To the extent that this is a very interesting theoretical or academic question, it doesn't, the facts of this case just don't match that. So if you were, if you were, we have to write something on this case, obviously. So if you were going to write the decision, what would you say was necessary beyond just considering. Now I want you to go into this balancing thing, just assuming it makes some sense. That you're going to balance the risk against the reward. And you know, there's a big chunk of money out here. What would you say about the risk? What would have to be the mere evidence, whether it came from the defendant or the government? See, I think that it would have to be, you know, a defendant, an individual will make that risk-reward assessment. But I think that when it comes to entrapment, the question is, I think it has to be, as you say, opportunity plus. I mean, some, some evidence of initial reluctance. Some evidence of, of repeated solicitation. I mean, you know, if, if you offer someone a million dollars to push a button and kill somebody and they, you know, leap for the button, this is not someone who was initially reluctant. This is not something that. It's more complicated in the case where you don't have the ringleader, but you have the fellow travelers. Yeah. And we don't really know to what extent the person that the government was targeting is himself relaying this message and maybe applying that persistence. Now, that person isn't really the government's agent, but the dominoes start falling when the government induces the first guy and he may browbeat the others. Two things. Absolutely not a government agent. And, and the cases, I mean, this Court's cases and the Supreme Court's cases. But the individual may just be just as innocent to begin with and may require just as much persuasion to overcome his natural resistance to committing a crime. Well, to the extent, I mean, that's, that's possible. And, but to the extent that that's possible, that does not constitute inducement. I mean, and that's Busby, Rhodes, Brandon, Visera. I mean, the inducement has to be by the government agent. And if you look at what the government agent, the only government agent contact with Mr. Golden was when he got them all together and said, okay, this is really dangerous and I'm scared. And Mr. Reed, did you tell them that there's somebody in there with a gun? And, you know, the agent never put together the plan. It was Mr. Reed's plan to the, to the extent that Mr. Reed brought, whether this was his normal crew or whether this was a crew that he brought together for this event, whatever persuasion or inducement was not by a government agent in this case. Well, thank you for your argument. I know we caught you somewhat unawares, but I see that you were prepared, so, to respond to us. And thank you for helping us with this difficult question. Thank you. And Judge Clifton, I'll just point out that I just did see a preview that that push-a-button-and-somebody-dies thing, they're making a big Hollywood movie out of it. It will be out soon. Maybe we can claim royalty somehow. I think we thought about it a little late. Well, I think we've busted through your minute, so. I was going to say, we'll waive our rebuttal unless the Court has something to ask. And I'm, again, humbled by being here at this Court in front of this panel. And if the Court had to do my work for me, I apologize. If there's nothing more, the case just argued is submitted. We'll move to the next case on the argument calendar. The next case listed has been submitted on the briefs. That's Gruber v. Palmer. The next case on the argument calendar is GCB Communications v. U.S. South Communications. Now we get into the easy part.
judges: Wallace, Fernandez, Clifton